IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENNIS S.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

6:17-cv-01290-HZ

**OPINION AND ORDER**

**HERNANDEZ, J.**:

    Plaintiff Dennis S. seeks judicial review of the Social Security Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the Administrative Law Judge (ALJ) erred in (1) discounting the medical opinion of Plaintiff's treating physician Dr. Heidi Fletemier, M.D.; (2) not fully

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Page 1 - OPINION AND ORDER

crediting Plaintiff's allegations about his symptoms; and (3) finding that Plaintiff's depression was not severe. I reverse the Commissioner's decision and remand for an immediate award of benefits.

## PROCEDURAL HISTORY

Plaintiff, who was born in 1952, applied for disability insurance benefits in March 2013, alleging disability beginning in February 2013. Tr. 21. His applications were denied initially and on reconsideration.

In January 2016, Plaintiff received a hearing before an ALJ. Tr. 36-70. In April 2016, the ALJ issued his decision, finding Plaintiff not disabled. Tr. 21-30. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review.

## THE ALJ'S DECISION

To establish disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the familiar five-step sequential process to determine whether a claimant has established disability. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). In the first four steps of the process, the claimant has the burden of proof, and at the fifth step the burden of production shifts to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Here, at the first step of the process, the ALJ found that Plaintiff had not engaged in substantial gainful employment from his alleged onset date of February 1, 2013 through the date he was last insured, December 31, 2015. Tr. 23. Although Plaintiff worked part-time in his

family janitorial business after his alleged onset date, his income and earnings were below the level of substantial gainful activity. Tr. 23.

At the second step, the ALJ considered the severity of Plaintiff's physical and mental impairments. *See Yuckert*, 482 U.S. at 140-41. An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for twelve months or longer. *See id.*, 482 U.S. at 141. Here, the ALJ found that Plaintiff had the severe impairments of congestive heart failure and cardiomyopathy. Tr. 23. As to mental impairments, the ALJ found that Plaintiff's "medically determinable mental impairment of depressive disorder not otherwise specified did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and was therefore nonsevere." Tr. 24.

At the third step, the ALJ determined Plaintiff's impairments did not meet or equal any listed impairments that would preclude substantial gainful activity. Tr. 25. The ALJ then assessed Plaintiff's residual functional capacity (RFC). RFC is the Commissioner's estimate of a claimant's ability to perform sustained, work-related physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 404.1545(a). The ALJ found that Plaintiff had the RFC to perform light work, with the additional limitations that he could lift and carry up to ten pounds occasionally or frequently[2]; could sit six hours of an eight-hour day, and stand or walk two hours of eight hours in a normal workday[3]; could occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or

---

[2] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

[3] A job is classified as light work "when it requires a good deal of walking or standing" even though "the weight lifted may be very little." 20 C.F.R. § 404.1567(b).

Page 3 - OPINION AND ORDER

scaffolds; could occasionally stoop, kneel, crouch, or crawl; and should avoid concentrated exposure to extreme heat, fumes, dust, gases, and hazards such as unprotected heights and moving machinery. Tr. 25.

At the fourth step, the ALJ considers whether a hypothetical person with the plaintiff's RFC could perform the plaintiff's past relevant work. *See Yuckert*, 482 U.S. at 141. Here, Plaintiff's past relevant work included working as a janitorial supervisor, a skilled, medium-level job, although Plaintiff performed it as a heavy-level job; program analyst, a skilled, sedentary job; manager, a skilled, sedentary job; and route sales driver, a semi-skilled, medium job. Tr. 29. A vocational expert testified at the hearing that a person with the proposed RFC could perform Plaintiff's past relevant work as a program analyst and manager. The ALJ found Plaintiff was not disabled, and therefore did not address the fifth step, which asks whether the claimant could perform any jobs that exist in significant numbers in the national economy. *See Yuckert*, 482 U.S. at 142.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if the decision is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* If the evidence is susceptible of more than one rational interpretation, the court must uphold Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

Page 4 - OPINION AND ORDER

## I. The ALJ's Decision to Give Little Weight to Dr. Fletemier's Opinion

Here, the ALJ gave little weight to the June 2015 opinion of Plaintiff's treating physician Dr. Heidi L. Fletemier, M.D., who had been Plaintiff's primary care physician since at least August 2012. Tr. 465. The ALJ found that Dr. Fletemier's opinion was contradicted by Plaintiff's own allegations and by other medical opinions.

The ALJ resolves conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### A. Dr. Fletemier's Opinion

In June 2015, Dr. Fletemier issued a report on Plaintiff's ability to work, answering questions posed by Plaintiff's attorney. Tr. 624-25. Dr. Fletemier opined that Plaintiff's "cardiac status would preclude any type of work other than sedentary. Unfortunately, the medications themselves cause side effects that make a sedentary full-time position not feasible." Tr. 624. Dr. Fletemier reported that Plaintiff "takes cardiac medications that lower his blood pressure to a level that enables his heart to function, but at the same time causes significant fatigued [*sic*] and decreased exercise tolerance." Tr. 624. Dr. Fletemier also stated that because Plaintiff took furosemide, a "water pill necessary to maintain his cardiac function," he required breaks to urinate "every 15-20 minutes in the morning," continuing throughout the day at a lesser rate. Tr. 625. Plaintiff also needed "breaks for chest pain for which he takes nitroglycerin," and for "any heart palpitations related to his atrial fibrilliation." Tr. 625.

Dr. Fletemier noted that Plaintiff had fainted while driving on I-5 in January 2013, and his physicians concluded that a medication for treating congestive heart failure, Aldactone, had

Page 5 - OPINION AND ORDER

caused the syncope by lowering Plaintiff's blood pressure. Because of his fatigue and low blood pressure, Plaintiff "requires naps during the day. These are 30 to 90 minutes at a time," up to three naps per day. Tr. 624. Plaintiff "also requires breaks if he has angina which is frequent, but not daily. His general speed of doing chores is quite slow. Quite simply he does not have the stamina to work an 8 hour day and it is highly unlikely an employer would tolerate his current pace as an acceptable pace for the work place." Tr. 624-25. Dr. Fletemier opined that Plaintiff "would be expected to miss between 5-7 days per month either full days or half days," based on his appointments with cardiologists, pulmonologists, dermatologists, and others. Tr. 625; Tr. 53 (Plaintiff testified that he and Dr. Fletemier reviewed his medical records from 2008 to determine the number of appointments per month).

As to mental functioning, Dr. Fletemier stated that depression affected Plaintiff's concentration somewhat, although Plaintiff was taking Wellbutrin. Dr. Fletemier noted that a neuropsychological evaluation of Plaintiff in May 2014 found "sustained attention inefficiency" caused by fatigue and other factors. Tr. 625.

### B. The ALJ's Reasons for Giving Dr. Fletemier's Opinion Little Weight

#### 1. Conflict with Plaintiff's Alleged Onset Date

In explaining why he gave Dr. Fletemier's opinion little weight, the ALJ stated that Dr. Fletemier "sets forth an onset date of disability that is some 5-years prior to what the claimant himself has alleged." Tr. 28. The ALJ stated Dr. Fletemier "indicated" that "the onset of these restrictions commenced on or about February 9, 2008." Tr. 28. An ALJ may reject a medical opinion that conflicts with the plaintiff's own testimony. *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989).

Page 6 - OPINION AND ORDER

I find, however, that Dr. Fletemier's statement does not conflict with Plaintiff's allegations about his alleged onset date. Dr. Fletemier did not set forth an earlier onset date, but rather stated Plaintiff's "health problems *clearly started* on February 9, 2008 when he had a myocardial infarction resulting in cardiogenic shock. *Function worsened* when he had syncope while driving on the freeway February 1, 2013."[4] Tr. 625 (emphasis added). Dr. Fletemier also noted that Plaintiff's "underlying cardiac issues," combined with the effects of the medication required to treat those issues, progressively deceased Plaintiff's stamina and endurance. Tr. 625. I find Dr. Fletemier's statement about when Plaintiff's heart condition first manifested itself does not conflict with Plaintiff's alleged onset date, and does not support discounting her opinion.

### 2. Opinion on Plaintiff's Ability to Work

The ALJ also discounted Dr. Fletemier's opinion in part because "the question of whether an individual is able to sustain work on a regular and continuing basis, at any level of exertion described in the Regulations, is an issue reserved to the Commissioner of Social Security." Tr. 28 (citing Social Security Ruling (SSR) 96-5p). The ALJ is correct that the Commissioner ultimately determines whether a claimant is able to work. 20 C.F.R. § 404.1527(d)(1) (applicable to claims filed before March 27, 2017); *see also* 20 C.F.R. § 404.1527(d)(3) (the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner"). However, "'In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *see also*

---

[4] The record indicates that Plaintiff's syncope episode occurred January 3, 2013. Tr. 490 (report of Christine S. Magill, PA-C).

*Nichols v. Colvin,* No. 11-cv-7699, 2013 WL 4495524, at *11 (N.D. Ill. Aug. 21, 2013) (holding that although a treating physician's opinion on a claimant's ability to work is "not entitled to controlling weight, the ALJ still must consider the opinion").

Here, Dr. Fletemier opined that it was "highly unlikely" that an employer would tolerate Plaintiff's slow pace. Although Dr. Fletemier's opinion on Plaintiff's ability to work is not controlling, the ALJ erred in discounting her opinion because the opinion was based on her medical expertise and on her experience treating Plaintiff.

### 3. Conflict with Dr. Ghalili's Opinion

The ALJ also found that Dr. Fletemier's opinion was contradicted by a treating cardiologist, Dr. Kamran Ghalili, M.D. In a January 2014 report, Dr. Ghalili stated, "Regarding his disability, I think the patient can do this job. This was discussed with the patient and family in detail." Tr. 583.[5] Dr. Ghalili did not explain his conclusory statement that Plaintiff could "do this job." The ALJ chose to rely on Plaintiff's testimony at the hearing about Dr. Ghalili's opinion. Plaintiff testified that Dr. Ghalili told him and his wife that "you [i.e., Plaintiff] can work, just like I can work. I've had -- he said, I've had multiple surgeries -- not with the heart, but I've had shoulder surgery, and I've had whatever other surgery or two he mentioned." Tr. 61. Citing this testimony, the ALJ stated,

> The claimant's hearing testimony additionally indicated that his cardiology specialist [Dr. Ghalili] found him somewhat less limited than did his primary care physician. In particular, the claimant's testimony suggested that his cardiologist believed him capable of performing sedentary work activity, and that the claimant disagreed strongly. While such an exchange is not immediately apparent, the undersigned has no reason to disbelieve the disagreement with his treating cardiologist.

---

[5] In a December 2013 report, Dr. Fletemier stated, "Dr. Ghalili told him to quit working. I told him to quit working." Tr. 573.

Page 8 - OPINION AND ORDER

Tr. 27. The ALJ also reasoned that Dr. Ghalili's opinion was entitled to more weight than Dr. Fletemier's opinion because she is not a cardiologist. *See* 20 C.F.R. § 404.1527(c)(5) (Commissioner generally gives more weight to a specialist's opinion than the opinion of a source who is not a specialist).

I note that it seems unusual for an ALJ to determine the substance of a physician's opinion based on the claimant's testimony about the physician's opinion. In any event, Plaintiff's testimony indicates that Dr. Ghalili based his opinion on his own ability to return to work as a cardiologist after receiving shoulder and other unspecified surgeries. Dr. Ghalili's ability to work after undergoing surgery is not relevant to Plaintiff's ability to work. Neither Dr. Ghalili's conclusory report nor his statements to Plaintiff provide specific medical reasons to support his opinion that Plaintiff could do "his job." In contrast, Dr. Fletemier gave detailed medical reasons for her opinion on Plaintiff's functional capacity.

Furthermore, Dr. Ghalili opined on Plaintiff's ability to return to work, which, as noted above, is an issue the law reserves to the Commissioner. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). There is no indication that Dr. Ghalili was familiar with the physical or mental requirements of Plaintiff's past relevant work. *See McLeod*, 640 F.3d at 885 (although a treating physician's evaluation of a plaintiff's ability to work "may be useful or suggestive of useful information," "a treating physician ordinarily does not consult a vocational expert or have the expertise of one").

I also note that Dr. Ghalili and another cardiologist, Dr. Priya Kansal, determined that Plaintiff's cardiac condition should be treated as New York Heart Association (NYHA) class III heart failure. *See, e.g.*, Tr. 334 (report of Dr. Ghalili, Feb. 1, 2013); Tr. 362 (report of Dr. Kansal,, May 20, 2013); Tr. 473 (report of Dr. Kansal, May 16, 2013); and Tr. 587 (report of Dr.

Page 9 - OPINION AND ORDER

Kansal, Dec. 19, 2013). As one district court recently explained, "The NYHA is the most commonly used classification system to determine patients' heart failure according to the severity of their symptoms. The NYHA places patients in one of four categories based on how much they are limited during physical activity." *Reed v. Berryhill*, 337 F. Supp. 3d 525, 527 n.5 (E.D. Pa. 2018) (citations omitted). NYHA class III "denotes a person with '[m]arked limitation of physical activity. Comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea.'" *Id.* at 528 (footnote omitted); *see also Feskens v. Astrue*, 804 F. Supp. 2d 1105, 1120 (D. Or. 2011) ("Class III indicates a patient has 'cardiac disease and with marked limitation of physical activity. They are comfortable at rest but experience symptoms with the milder forms of ordinary activity.'") (citation omitted)). Dr. Fletemier's opinion on the effects of Plaintiff's congestive heart failure is consistent with the findings of Drs. Ghalili and Kansal that Plaintiff's symptoms of congestive heart failure fall within NYHA class III.

I conclude that substantial evidence does not support the ALJ's decision to give little weight to Dr. Fletemier's opinion.[6] I also conclude that the ALJ's error was not harmless because the ALJ failed to include the limitations noted by Dr. Fletemier in the Plaintiff's RFC. *Cf. Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (ALJ's error is harmless if "inconsequential to the ultimate nondisability determination") (quotation marks omitted).

## II. The ALJ's Credibility Determination on Plaintiff's Testimony

---

[6] The ALJ gave "significant weight" to the reports of two reviewing physicians who found Plaintiff could perform a broad range of sedentary work. *See* Tr. 76-78 (RFC assessment by Dr. Martin Lahr, M.D.); Tr. 90-91 (same, by Dr. Sharon B. Eder, M.D.). Because the ALJ improperly discounted the opinion of Dr. Fletemier, the contradictory opinions of the non-examining review physicians do not support discrediting Dr. Fletemier's opinion. "'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (quoting *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (emphasis omitted)).

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting his statements about the severity of his impairments. To find "a claimant's pain or symptom testimony not credible," an ALJ "must make two findings." *Treichler*, 775 F.3d at 1102. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citation and quotation marks omitted). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ must "specifically identify" the claimant's testimony that he or she finds to be not credible and explain which evidence undermines the testimony. *Id.* (citing *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). This requirement means that "'[g]eneral findings are insufficient.'" *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995)). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Id.* "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted). Here, because the ALJ found Plaintiff presented objective medical evidence of his underlying impairments, and because the ALJ did not find evidence of malingering, the ALJ was required to identify the specific portions

of Plaintiff's testimony he found not credible, and to explain what evidence undermines Plaintiff's credibility.

Plaintiff testified that because of his congestive heart failure and the medications for that condition, he has "significant fatigue and poor stamina," with "heavy legs," causing "very slow walking." Tr. 45. Plaintiff testified that he had increased his dosage of "water pills" from one pill to three pills, causing "frequent and urgent trips to the bathroom, especially within an hour of taking the pills in the morning." Tr. 48. Plaintiff testified that he has "periods of sweating, feeling cold or hot. And this happens usually with mild or extended exertion. It can happen without exertion, very suddenly and severe, causing immediate rest or laying down and napping." Tr. 45. Plaintiff testified that he suffers from "shortness of breath, which can be at rest with no exertion having caused it. And it definitely does happen regularly with light or more exertion, such as walking or going up stairs or inclines. Sometimes it feels like I may have been having a heart attack, and I end up with the fear of dying in those episodes." Tr. 46. Plaintiff testified that he took two to three naps of 30 to 60 minutes per day "to help maintain my daily functioning." Tr. 47. After fainting while driving on I-5, Plaintiff has suffered episodes of "near syncope," including one that occurred two weeks before the hearing. Tr. 47.

In discrediting Plaintiff's testimony about his symptoms, the ALJ found that although Plaintiff's "cardiovascular impairments have limited his work-related physical abilities, they have not been totally work-preclusive." Tr. 26. I note that Plaintiff testified that he was working only about 30 hours per month at his family-owned janitorial business. Tr. 43.

The ALJ also stated that "the medical treatment notes indicate that the claimant has experienced some limited medical improvement during the period under review." Tr. 26. The ALJ stated that while echocardiograms and catheterization reports "between January 2013 and

Page 12 - OPINION AND ORDER

March 2013 show that the claimant's left ventricular ejection fraction had decreased from 33 percent down to a range of 20-25 percent," but "this was not a persistent change for the worse, as subsequent echocardiograms both from December 2013 and December 2014 show that the claimant's baseline findings had improved with treatment, and had returned to 35 percent left ventricular ejection fraction." Tr. 26-27 (citations omitted). The ALJ also noted that Plaintiff "underwent successful radiofrequency ablation treatment for atrial fibrillation in July 2015." Tr. 27. The ALJ found that generally, the findings on physical examinations of Plaintiff "have been mixed . . . rather than consistent throughout the record." Tr. 27.

I find that the ALJ failed to identify specific reasons for discrediting Plaintiff's testimony and allegations. As the Seventh Circuit has noted, "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Here, the ALJ did not explain how the "mixed" medical findings on Plaintiff's heart condition discredited his testimony about the severity of his symptoms. Dr. Fletemier noted that Plaintiff's heart condition was progressively worsening. Tr. 625. Nor did the ALJ explain how slight improvements in Plaintiff's ejection fraction rates discredit Plaintiff's testimony. When the ALJ fails to specify evidence supporting the reasons for discrediting the claimant's testimony, it is not this court's role to search the record and make independent findings. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). I conclude that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's testimony on the effects of his congestive heart failure. The ALJ's error was not harmless.

### III. Plaintiff's Depression

The ALJ found that Plaintiff's depression was not severe. There is substantial evidence that Plaintiff's depression was controlled by medication starting in early 2014. *See, e.g.,* Tr. 564 (Dr. Fletemier report of Feb. 2014 indicating that Plaintiff was "adjusting to Wellbutrin" and showed appropriate mood and "mildly flat affect" with occasional smiles); Tr. 570 (questionnaire indicated Plaintiff had "mild" depression). However, even though Plaintiff's depression was not severe, the ALJ should have included limitations caused by depression in the RFC. *See* 20 C.F.R. § 404.1545(e) (Commissioner considers nonsevere impairments in determining RFC).

## IV. Remand for Further Proceedings or an Award of Benefits

Plaintiff contends that this case should be remanded for an immediate award of benefits rather than for further proceedings to determine disability. When a court finds that the ALJ committed harmful error, the Social Security Act allows the court to modify or reverse the Commissioner's decision "'with or without remanding the case for a rehearing.'" *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g) (emphasis deleted)). The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits." *Id.* at 1020. The court should determine first whether the "'ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Treichler v. Comm'r*, 775 F.3d 1090, 1100-01 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1020). Second, if the ALJ has erred, the court should determine whether the record has been fully developed, whether outstanding issues must be resolved before determining disability, and whether further administrative hearings would be useful. *Id.* at 1101. Third, if the court concludes "that no outstanding issues remain and further proceedings would not be useful," the

court may "find the relevant testimony credible as a matter of law" and "determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding." *Id.* (citations, quotation marks, and brackets omitted). The court retains discretion to remand for further proceedings if the record as a whole creates "serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, I conclude that when given proper weight, Dr. Fletemier's opinion establishes that Plaintiff required several naps during the day because of fatigue, that he needed frequent breaks, especially in the morning, because of his diuretic medication, and that he lacked the stamina to complete an eight-hour work day. *See Feskens v. Astrue*, 804 F. Supp. 2d 1105, 1122 (D. Or. 2011) (remanding for an immediate award of benefits because the record showed that the plaintiff's impairments "render him unable to work on a regular and continuing basis for '8 hours a day, for 5 days a week, or an equivalent schedule'") (citing SSR 96-8p, at *1).

No outstanding issues remain to be resolved, so further proceedings would not be useful. Nothing in the record creates serious doubt about whether Plaintiff is disabled. I conclude that Plaintiff is entitled to an immediate award of disability benefits.

## CONCLUSION

The Commissioner's decision is reversed and this case is remanded for an immediate award of benefits.

IT IS SO ORDERED.

Dated this \_\_11\_\_ day of ~~February~~ March, 2019.

Marco A. Hernandez
United States District Judge

Page 15 - OPINION AND ORDER